# Directors of the Poor, Etc., of Westmoreland County, Plffs. in Err., v. H. L. Donnelly and G. B. Anderson.

The directors of the poor, etc., of a county, who have become responsible for the maintenance and relief of all persons chargeable upon the county are liable to physicians who rendered surgical and medical aid in cases of emergency to persons who at the time were in need of immediate medical attendance, and who then were or shortly after became chargeable upon the county, although such directors had contracted with other physicians for such services.

A contract by a physician with a railroad company, to render professional services to employees of the company or to those to whom the company is liable for personal injuries, does not bind him to render such services to persons injured while trespassing on the property of the company.

(Argued October 7, 1886.   Decided October 25, 1886.)

October term, 1886, No. 103, W. D.   Error to the Common Pleas of Westmoreland County to review a judgment for plaintiffs in an action of assumpsit to recover for surgical and medical services.   Affirmed.

The case was heard in the court below on a case stated substantially as follows: Drs. H. L. Donnelly and G. B. Anderson, plaintiffs in the court below, were practising physicians in Latrobe, under the firm name of Drs. Donnelly & Anderson, at the time the services were rendered for which the above stated action was brought.

That firm, from December 6, 1879, to June 2, 1882, rendered surgical and medical service in cases of emergency to persons who, at the time, were in need of immediate medical attendance, and who, at the time or shortly after, became legally chargeable upon the county of Westmoreland.

NOTE.—Services rendered by a physician in case of emergency to a pauper are chargeable against the district, and may be recovered after an order of approval is secured.   Summit Twp. Poor Dist. v. Byers, 8 Sad. Rep. 222; Chester County v. Worthington, 38 Pa. 160; Westmoreland County v. Murry, 32 Pa. 178.   For the practice in Fayette county, see Campbell v. Grooms, 101 Pa. 481.   But such cannot be had where the county physician was present to render the service (Pickett v. Erie County, 3 Pa. Co. Ct. 541); or where the credit was given to the individual (Roney v. Montgomery County, 1 Montg. Co. L. Rep. 13).

Said defendants were duly incorporated by act of April 5, 1849, by virtue of which they become responsible for maintenance, relief, and support of all persons who became legally chargeable upon the county of Westmoreland; and in accordance with the provisions of said act, investing said defendants with discretionary powers to make rules and regulations for the proper and convenient government and support of the poor, they appointed and contracted with physicians other than plaintiffs for the districts of Derry and Latrobe, for the times during which the services in question were furnished, which said appointments and contracts were first brought to the attention of said plaintiffs on or about February 25, 1881.

Certain of the persons named in plaintiffs'account were injured while trespassing upon the property of the Pennsylvania Railroad Company, in the districts of Latrobe and Derry. During the time said services were rendered, the Pennsylvania Railroad Company had a contract with Dr. H. L. Donnelly to act as railroad surgeon between Irwin and New Florence, which was as follows:

"Agreement with H. L. Donnelly, M. D., of Latrobe, Pennsylvania, for services as company physician and surgeon during the year 1879. 1. For and in consideration of the payment to me of twenty-three dollars per month, I agree to attend professionally and attentively, at all points between Irwin and New Florence including Southwest Pennsylvania Railway, to all cases of personal injuries received by the employees of the Pennsylvania Railroad Company, and arising directly or indirectly from or in connection with the management, operation, or business relating to the railroad of said company, so long as they may need attendance. 2. To attend also to all cases of personal injuries received by persons, in like manner as aforesaid, not in the employ of the company, to whom they may or may not be liable, at the discretion of the general superintendent. 3. To attend, also, during the period that may be necessary, all cases of personal injuries received by passengers on the said railroad, which may be placed under my charge by the proper officers of the company. 4. To be in readiness and to go and give the necessary attention to injured persons at any point upon the road in cases of accident arising as aforesaid, if called upon by the general superintendent or officer or employee representing him. 5.

To make, at my own charge and expense, such provision as shall insure, in case of my sickness or absence, the proper attention by a competent and duly qualified regular physician to all such cases as those above mentioned. 6. And I further agree that when attention is rendered to persons not in the employ of the company, after having been notified by the general superintendent or officer in charge, that the company does not hold itself responsible for any claim for damages sustained by any such injured person, the bill for such attendance may be presented for payment to such person for such sum as the general superintendent may think reasonable, but the company shall not be liable to pay any such bill for services so rendered. And I further agree to attend to any cases of injury to individuals that may be brought on my division, though such injury may have occurred on another portion of the road. This agreement to be and remain in full force and effect from January 1, 1879, to January 1, 1880. Free transportation over the railroad of the said company to be furnished during said period."

The sum of $275.50 of plaintiffs' bill was for services rendered in cases of emergency to persons (not employees) injured while upon the property of the Pennsylvania Railroad Company while walking on the track, or stealing rides, etc. The sum of $40.50 was for services rendered in cases of emergency to persons not injured on the property of the Railroad Company. The sum of $57 was for subsequent treatment to persons injured while upon the property of the Pennsylvania Railroad Company, and the sum of $16 was for subsequent treatment to persons not injured while on the property of the railroad company, making the total account $389. Under date of August 11, 1880, the account contained a charge of $25 for services rendered to Henry Boda by Dr. Donnelly with the following memoranda: "Adjusting a fracture of left thigh bone. Injured while stealing a ride on a freight train near Derry. Notified by train despatcher at Derry. Night visit made to Derry and fracture apparatus furnished."

The court, HUNTER, P. J., charged as follows:
"We understand that the defendants do not seriously dispute their liability to pay for surgical and medical treatment rendered to indigent poor persons in cases of emergency—the defense relied on here being the contract which Dr. Donnelly had

with the railroad company, and that the services rendered were largely in the line of his duty under such contract. In reply to this position plaintiffs contend that this action is in a different right, and that if the defendants pay or are compelled to pay what the railroad company should pay, they have their recourse on the company. It is very true that an individual debt cannot be set off against the firm's claim, and the converse is so unless the consent of the firm is had. But to hold this doctrine as applicable here would be drawing it too fine. From the plaintiffs' account, which is made part of the case stated, the professional services were rendered sometimes by Dr. Donnelly, sometimes by Dr. Anderson and sometimes by both. Now, when the services were rendered by Dr. Anderson it would not be a violent presumption that Dr. Donnelly was absent and that Dr. Anderson was acting for and in behalf of Dr. Donnelly, who, by the terms of his contract, was required in such case to furnish at his own expense a competent physician in his stead. The presumption would also be equally strong that if the case was attended to personally by Dr. Donnelly, and one within the scope of his contract, he was but serving the company; while, if both were present, there is nothing to indicate that the services of his partner were absolutely necessary.

"The persons injured on the railroad were trespassers, and were carried to the office of the plaintiffs, frequently by persons, as we understand it or at least so far as we are informed, not connected with the railroad company. Under the circumstances it would, I think, be a strained construction of the contract to hold that Dr. Donnelly was bound to treat the case for the company. The contract provides *inter alia* that Dr. Donnelly was to be in readiness and to go and give the necessary attention in case of accident, if called upon by the general superintendent, or officer or employee representing him. In one of the charges such notice was given which, I think, comes within this provision in the contract—the charge of August 11, 1880, $25, treatment rendered Henry Boda. For this case I do not think the defendants should be held responsible, but for all the other cases of emergency for treatment rendered at the time, the defendants should pay. See Westmoreland County v. Murry, 32 Pa. 178; Chester County v. Worthington, 38 Pa. 160.

"As to the subsequent treatment; I am not satisfied that the defendants can be compelled to pay. I know it is important to

the surgeon himself, who performs an operation, that he continue with the patient, because, in one sense, his reputation is at stake; and it may be also important to the patient that there be no change in the physician in the after treatment. But, at the same time, I think it was reasonably the duty of the railroad physician to give information to the company, and, if it refused to be responsible, then to let the defendants know, as others might inform them of the necessities of the suffering poor. It is true that the plaintiffs may not have known that the defendants had a regularly salaried physician, whose duty it may have been to attend these cases, yet it would seem hard that they should be compelled to pay for what they had otherwise provided for. Of emergency treatment we have:

| | | |
|---|---:|---:|
| Railroad cases | $275 | 50 |
| Other cases | 40 | 50 |
| | $316 | 00 |
| Deduct charge of August 11, 1880 | 25 | 00 |
| | $291 | 00 |
| Add interest from January 1, 1882, to April 3, 1886 | 74 | 20 |
| | $365 | 20" |

Judgment was rendered for plaintiffs for the sum of $365.20, and defendants took this writ, assigning as error the action of the court in entering the judgment for plaintiffs as above, and also in allowing plaintiffs to recover any sum whatever for emergency treatment in railroad cases.

*Wentling & Miller* and *Moorhead & Head* for plaintiffs in error.

*Paul H. Gaither* and *L. W. Doty* for defendants in error.

PER CURIAM:

We so entirely agree with what the learned judge has said in his opinion, and the reasons given therein for the judgment which he directed to be entered, that we deem it unnecessary to add anything thereto.

The judgment is affirmed.